20-3080. United States of America v. Mark Wayne Russell, Appellant. Mr. Axum for the Appellant. Mr. Hansford for the Appellant. Good morning, Counsel. Good morning. Counsel for Appellant, you may proceed. May it please the Court, Counsel. Tony Axum representing Appellant Mark Russell. I'd like to reserve three minutes for rebuttal. All right. The GPS condition in this case involves a greater deprivation of liberty than reasonably necessary to satisfy the statutory purposes of supervised release. Under this Court's precedent, if the District Court wanted to impose a condition to monitor Mr. Russell's location around the clock, it had to identify the purpose served by such monitoring and make sure that the then reasonably necessary to achieve that purpose. The Court has said that what is reasonably necessary is the least restrictive alternative to achieve the purpose at issue. How would you define that? How would I define the least restrictive alternative? Yes. In this case? Yes. Yes. One way, one example would be something that the Court did impose and imposed before, which was if the purpose is to deter or to protect the public, it would be to place Mr. Russell in sex offender treatment where he undergoes regular polygraphs. That would both deter and for 10 years we know that he didn't have any violations, so it protected the public as well. Why is that a deterrent? I guess I'm not sure I understand. Why is? So yes, sex offender treatment relates to the offense and his ability to commit it and his desire to commit it. But first of all, the fact that he previously underwent sex offender treatment and yet re-offended suggests to me that that condition didn't work. So to the extent that now suggesting that that was what the Court should have done and that alone, I think the facts of this case actually undermine that contention. Well, I'm not saying that that and that alone, I'm saying that that's, Judge Rogers asked what a least restrictive condition would be, but I disagree with. What you said, what were you going to say? I'm sorry. I disagree that it did not work. It did work for 10 years. At about 10 years, he stopped sex offender treatment, but I should note that sex offender treatment involves routine polygraph exams and the polygraph exams in themselves are a deterrent because they ask questions about who he has been with, what he has been doing, his sexual activity, and he would be deterred from engaging in unlawful behavior because it would be revealed through the polygraph. So the sex offender treatment, I guess that you could separate out polygraph from sex offender treatment, but they are part and parcel. But the point, I think, as you acknowledge, it worked for 10 years and then it didn't work because he stopped. So the judge knew that. So what was the judge to do? I'm not sure why it stopped. Doesn't matter. I am sure that the judge could have ordered it to initiate again. But there are other conditions. I mean, the computer monitoring restriction is also a least restrictive condition that deters and protects the public. Even in the context of GPS, the court could have imposed a GPS condition that pinged when he was at certain locations or at certain times. But this is a very broad GPS condition. And I should note, I mean, the court would still have to have identified locations where crime would be more likely or times where crime would be more likely. Well, that's asking the district court to look into the future. And that's, I don't think that's required in all fairness. And I guess what I'm concerned about here is I thought you were focusing perhaps more narrowly on the question for example, was it necessary for him to wear the ankle bracelet within his home? I'm certainly concerned about that, but my concern is much broader than that. Oh, I understand that. But I mean, given our standard of review here, it seems to me that you have a very difficult burden given this man's behavior and the concern that yes, it's computer related, but it's also the revocation travel related. I, what I would say about travel is that travel is not inherently criminal. And as the district judge said himself in imposing this condition, he said, he said, so even though he'll be subject to GPS monitoring, as long as he's having interaction with adults, he's not going to be able to there's no prohibition and no restriction on his movement. GPS does not tell the court what Mr. Russell is doing or who he is with. Shouldn't we view the district court statement as acknowledging not that travel is illegal, but given this man's behavior, how do we handle travel without simply saying he cannot leave his home without, I don't know, a law enforcement officer or a probation officer? Your Honor, I would have to strongly disagree that travel is the hallmark of the crime. I agree. I'm not suggesting that, but I am suggesting that as a result of travel and what happened before he's now where he is and the district court can't ignore that. And I didn't understand you really to be suggesting that. And that's why I went to this very more limited issue about which I thought was one of your arguments. And I know you have a broader argument. I'm not suggesting that by mentioning a lesser issue. You are, in a sense, waiving your broader arguments. But what about within the home? Well, we do take issue with the GPS tracking his movements, even within the more narrow confines of the home. But I have to be frank. My understanding of the degree to which GPS, the logistics of installing the device, and whether there is technically a technical way for monitoring within the home to be more limited. Well, you take the bracelet off. That seems to make sense. Can I ask a question? And then I'm happy to be quiet. Well, go ahead. I've sort of lost my track. I apologize. Mr. Axum, what I can't quite figure out is the fact that GPS doesn't tell the court what he's doing or where he's going. I don't know. Sorry, it tells him where he's going, but not who he's with or what he's doing. I think that's what you were saying before. And I don't know if that helps you or hurts you in a certain way. And that is because I'm trying to understand what is the deprivation or restriction that is occurring as a result of this GPS. He wears the bracelet. He goes to and from. I understood Judge Walton's statement, as you quoted it, to be related to this kind of thing, which is this is not really that big an imposition. So can you say a little bit more about that? In other words, you suggested least restrictive means. Lesser restrictive means would be things like computer restrictions or polygraph testing. And I would think that some people might find those to be more restrictive than just wearing the ankle bracelet and going to and from your work or doing whatever else you would ordinarily do. So why do you think that this is a really restrictive condition? Well, if you're only thinking of it as wearing a bracelet like wearing a watch, I suppose it wouldn't be restrictive at all. But what we're talking about is a privacy interest here. The liberty interest at stake is a privacy interest. And the GPS is literally recording thousands of data points per day. And it's aggregating those data points. That is it. It is an invasion of privacy. And it's not a video, Mr. Axum. It's recording data points about where you're going. So if he's inside the home and I don't understand it to be at the level of he's in the bathroom now, he's in the kitchen now. I mean, it just says he's inside his home or he's at his office or he's not three hours away in Maryland in a place that we can't account for potentially soliciting sexual activity with with minors. Right. So what what's what's really the big deal of the GPS? Well, presumably there's I mean, presumably, if he has traveled even three hours away. The GPS would not identify whether he is with a minor or not. I mean, if the court is only concerned with him traveling great distances, then. GPS might measure that, but the. That's not the only question that the court had to answer. It monitoring him wherever he travels to what end what end does it serve? What purpose does it serve? And what I'm saying is. The value of that monitoring is is minimal because. The GPS is capturing, again, thousands of points of innocent behavior behavior that the court has is is permitted himself in the hope that there is some potentially unlawful behavior. I mean, unless. The court didn't say it shall ping every time you're three hours away from your home jurisdiction. That would be a less restrictive condition that, yes, you wear GPS and the GPS is going to stop you from going three hours outside. That's not what we have here. We have only surveillance. We have only GPS that is that is telling the probation office where he is at each moment of the day. That it's it's virtually useless information if. Where he if the probation office doesn't know what he's doing there or who he's with or that it's that it's criminal activity, it has to say. How does this argument not swallow and ruin any GPS surveillance? I mean, you couldn't you say the same thing about drug cases, about any case in which the court has ordinarily or routinely authorized GPS because precisely because it is not at the level of detail of telling you who they're talking to or exactly what they're doing. It's just surveillance, as you said. So shouldn't we have a concern that if we accept your argument, that's the end of GPS monitoring? You absolutely should not have that concern because 3583 accounts for that by requiring that the that the condition be narrowly tailored. So in the case of a drug case, a case before this court, USC Hunt. There was a GPS condition because there was also a stay away condition from a drug corner where the defendant had been arrested selling drugs. That is narrowly tailored. That is not what we have here. What we have here is just a broad, open ended GPS. We're going to look at every single place he goes and that you can look at every single place he goes. But what I'm saying is to what end, to what purpose? What is that serving? It is not serving. The court didn't articulate how that is helpful. It didn't articulate like what all the only thing that is happening is is is the deprivation of privacy. That's all that's happening. The court. There's there's no end result because because we don't know what the GPS, the GPS, as you said, is not looking. It's not it's not a video camera. It's what what is it doing except telling probation he's he's here, here, here. The court did. I suppose the court could have said and if you're three hours away, that's going to be a violation. And we want to know that because that that's suspicious to us. I take issue with with whether that is suspicious, because in the same breath, the court is saying you are allowed to travel. Travel is not the problem here. It is the the the problem is criminal conduct. Trap every person, as as you say, everything travel has travel and travel a necessary condition of the criminal conduct. At least it was a necessary condition. It was a necessary condition of the three hour trip to in Maryland for sexual. I think that I take issue with that, too. I think that's an unfair assumption. We can say travel was a necessary condition of his reoffense. It after the fact, we know that he traveled, but we do not know. Prospectively, we do not know whether travel was a necessary condition. I mean, there if he didn't arrange for the child to come to him, right? That's correct. He didn't. Then how is travel not a necessary condition? I guess I'm not understanding what a necessary condition is. I mean, it was a necessary condition for the crime, isn't an element of the crime. I mean, I'm not talking about either. I'm not talking about him being caught for the reoffense. I'm talking about the reoffense itself. And if he had not. Traveled. Three hours. To meet the child. Then he would not have committed that reoffense. That particular reoffense would not have happened. Isn't that correct? That is correct. I still don't think that travel is the but for cause of the offense. Because the harm that you're protecting against is the sexual assault of a child. And you do not need travel for that to occur. I thought it's travel. And maybe I'm misremembering, but it's travel a part of the statute. The Maryland offense, I do not believe that it was. He was he was charged with with attempted sexual contact with a child. In the federal offense, travel is a jurisdictional component. But again, it's still not a but for cause of the offense. I mean, that's, that's, let me, let me ask. Sorry, I lost sound hearing. I can't hear you. I'm sorry. I'm sorry. Go ahead. I'm sorry. Now I didn't hear the question. Yes. Can you hear me? Yes. I'm sorry about that. My apologies. This question is gonna I think a candid answer will be a bit against interest. But if this GPS condition had been in place, do you think it's more or less likely that he would have reoffended? If I genuinely don't know the answer to that. I understand that the easy answer is, it's less likely that he would have reoffended. And that feels like the easy answer because it feels like GPS will does more than it actually does. And by that, I mean, it feels there's a psychological impact, I don't deny that there is a psychological impact to being monitored 24 hours a day. That's the privacy interest that that I'm talking about. I mean, that is, that is what is being infringed. So I think but whether realistically, the GPS would have aided law enforcement in protecting the public, or stop the offense, or realistically, would he have been an actual deterrent? I don't think it would have given that it still would not say who he's with, or what he's doing. And any rational, a rational actor, an impulsive actor. Yes. And I accept that many criminal defense defendants are impulsive actors and have not thought through. But if we are distilling out rationally, logically, whether GPS can tell law enforcement anything prospectively, it cannot when it is only measuring location. When you combine it with something else that that location is prohibited, or that location is where criminal activity is occurring. Yes, that that it then takes on added significance. But that's my problem with this GPS condition. It is a standalone GPS condition. It does not restrict locations where criminal activity or time or, or anything else. It it certainly would, after the fact, could serve as an investigative tool. But an after the fact investigative tool is not one of the purposes allowed under 3583. Again, 3583 is cabins, the court's discretion to impose a condition of supervised release. And, and I should say, in this case, although we are talking about deterrence right now, the district court was very clear, the district court did not utter deterrence, the district court was very clear that this was to protect the public. And, and that I think, I think there is very little benefit to be gained from a standalone GPS condition. I'm mindful of your time. And I have a slightly different set of questions. And I'm hoping you can get to really quickly before you're done. You have an alternative argument, or maybe an addition, at the very least, you say we should send back this case for Judge Walton to conform the judgment to his statements about giving your client credit for time served on supervised release. Yes, I am a little confused by that, because I had not understood that getting credit for previous periods of supervised release is sort of typically what's done in terms of supervised release. I've not seen it before. And it's not actually consistent with my understanding of how supervised release works, that that supervised release is prospective, that you're trying to determine what amount of time is necessary for the person to be supervised in order to be rehabilitated. And it really doesn't have anything to do with whether they had previously a term of supervised release that was, in this case, unsuccessful, because he was revoked. So I am wondering whether the judgment actually states Judge Walton's true intention that he may have misspoke on the bench when he said time served. And so if we're sending it back, is the idea that he needs to clarify what he actually meant? I don't know that we can just say this was clearly a typo. So just say time served. Do you understand my concern? I do understand your concern. What would be your reaction to that? Well, my initial reaction would be there was a time, I know that the supervised release statute was amended sometime within the past, I want to say seven years, and forgive me for not knowing exactly. But there was a time when supervised release was the time that you had served at the time that you were given as a revocation was routinely subtracted from the time remaining on your supervised release. The supervised release statute was amended. And I understand that that is not normally the practice now. But there is nothing that prohibited prohibits it. Yeah, but that's not what he and the court gives you 24 months of imprisonment. Then if you get another period of supervised release, you subtract the 24 months, it's the term of imprisonment that was imposed that was subtracted from the subsequent term supervised release. Here. That's not what Judge Walton says. He says, obviously, he's given credit for the time he's already been on supervised release that I've never seen. And it doesn't really make sense in a way. So what I'm asking you is when you say send it back? Is it your understanding that Judge Walton actually intended for him to have 20 years because he'd already spent 10 years on supervised release? Is that what you're asking the remand to be about? Yes. It's I. To be frank, I am not sure what Judge Walton intended. I and as all criminal defendants, I can only proceed based on what the judge said. And he said that my client would receive credit for time served on supervised release that I that I'm talking about when the supervised release statute was amended. There was a time when the maximum term of supervised release was five years. I understand that that time has since passed, but courts have not frequently been in the position of having a 30 year or lifetime term of supervised release in sex cases. That's the standard. In sex cases. That is. Yeah. Yeah. Very, very lengthy. And I understand this is helpful. I'm sorry. I didn't mean to sidetrack. But you so if there is an ambiguity, if we don't really understand what Judge Walton meant, the send back wouldn't just be conformed to what you said. It would be you need to clarify what the term of supervised release is that you intended. Right. I'm not sure that I can agree with that. I mean, the judgment should say 30 years supervised release with credit for time served. That's that. I understand there's at least two other circuits that have reached the conclusion that you cannot get credit for time served for supervised release. We have not reached that issue. But I feel like that's like an outstanding legal question that we would have to decide. And we couldn't order him to do something that may well be inconsistent with the statutes in the law. And I don't know how that gets resolved because we haven't really briefed it or talked about it in depth. But why don't we hear from the government and we'll give you some time on our rebuttal. Thank you, Your Honor. All right, counsel for I want to emphasize four points here illustrating why the district court didn't abuse its discretion in deciding to put the defendant on GPS for the first two years of supervised release. First, the defendant is his underlying offense is a travel sex offense, making it especially sensible to monitor his movements during supervision. Second, the defendant is now a repeat offender in committing these sorts of offenses, justifying and necessitating more close supervision the second time around. Third, this court has repeatedly upheld a very similar condition, monitoring condition, which is computer monitoring in these sorts of cases. And that poses almost identical privacy considerations to what we've been talking about with travel. But this court has repeatedly upheld that as we go through on our brief on pages 32 to 33. And finally, other circuits have consistently upheld GPS monitoring for sex offenses involving children, even when those offenses don't involve travel. And so where you have someone like the defendant, where he has a travel sex offense, and he has repeatedly traveled significant distances in the district court's wide discretion to impose GPS monitoring. I do think that it's worth looking at those computer monitoring cases, because I think the concerns about privacy that would relate to movement monitoring would be basically parallel for computer monitoring. But this court has upheld computer monitoring has not seemed to see computer monitoring as difficult issue. No difference between wearing an ankle bracelet 24 hours a day and saying you can't turn on your computer and use it for certain reasons. I think under the Supreme Court's case law, the computer monitoring is the more invasive condition, the more invasion of an expectation of privacy. If you look at a case like Riley, whereas the Supreme Court, obviously this court has the Maynard case, but the Supreme Court has never said that kind of monitoring of public movements is a violation. But I think I take it that they may be comparable invasions of the privacy. But I think- What is the exact computer restriction? Is it that you can't go to certain sites or what exactly is being restricted? So in those cases, I think there's a package of restrictions. So often, first of all, in those cases, including in this case, there is a ban on using computers except for with permission of probation. And then even when you can use a computer, monitoring software is installed on the computer. You have to make your computer available, and this includes cell phones or cell phones that are available for inspection by the probation officer. There's a mandatory or an approved condition under the Adam Walsh Act in the same subject section, 3583D, that says that police officers can do searches of houses, computers, cars with reasonable suspicion, and that probation officers can do those sorts of searches in carrying out their supervision duties. So I think there are many ways that you can monitor anything that the defendant is doing online. And this court has routinely upheld those sorts of conditions. This court has also upheld in Delores' case a limitation on using only one personal internet-connected device in order to facilitate computer monitoring, saying that that makes it more cost-effective for probation, and therefore it's a reasonable restriction. So I do think the computer monitoring cases really are parallel to the GPS concerns in this case. Judge Rogers was asking some questions about possibly not having monitoring in the house or allowing the defendant to remove his GPS monitor in the house. I don't think there's been any argument or any showing that that is something that's feasible, and I think it runs into the when you tell someone that they're not going to be subject to a search at some specific time, then that planned random searches would allow people to anticipate when the searches happen. So in other words, I'm not aware of a way to say the defendant, as long as he's in his house, wouldn't have to use the GPS device. How would you be able to verify that he's in his house if he's not wearing the GPS device, if he's allowed to take it off? I thought you were going to answer that. In other words, he would invite the person to come to him rather than he go to the person. I mean, I think that's a concern, though I'm not sure it's one that would be directly addressed by GPS, but I just don't know practically how you would be able to have a condition that would allow you to take off your GPS device. So the answer is you don't know. I just want to be clear about this because we're talking in such generalities here. I've never worn an ankle bracelet, but if I had to wear it 24 hours a day, even when I'm in my home, at least to me, it seems different than, well, I can't turn on the computer, and if I do, I have to go certain places and I cannot go other places. So let me say a couple of things. First is I think the defendant's objection, both in the district court and at least in the opening brief, is solely focused on the invasion of privacy caused by the GPS monitoring. Well, it's based on a statutory provision, all right? So let's start there. And the argument first is this, at large, as it were, GPS is not the least restrictive necessary. And I think Judge in the context of this case, is that a reasonable basis on which this court could say it was an abuse of discretion for the district court to impose the standalone GPS requirement? Sure. So the statutory condition is reasonably necessary. This court has said in one case that it's a least restrictive means test, which I think in isolation almost sounds like a strict scrutiny test. But what this court has done in practice before and since millennia is uphold conditions as long as they're reasonable, strike down conditions that are unreasonable. Well, that's the question. Is it reasonably related to the underlying offense? And it seemed to me that one hurdle for the defendant here was the offense, in part, involved travel. Right. We agree with that. And that was outside his home. And if he's in his home, and you always know when he leaves his home, doesn't that address the travel concern? And I think you're telling me you simply don't know. And the defendant hasn't offered any evidence to show that a GPS has this capability. So I am not answering. I don't know. I am answering. I don't think it's possible. Well, that's the same thing, isn't it? You don't know if it were possible for him not wearing it in the house because he'd be in the house. But if he left the house, bells and whistles would ring and he'd have to go back in and put it on in order to be in compliance with the order. But I think that would still mean GPS monitoring. I mean, that still means GPS. He's somehow being monitored so that you know if he's leaving the it is not possible, as far as I understand, to have something where he'd be able to move, remove the GPS monitor and nonetheless be able to tell if he's traveling outside the house. So your understanding is once the district court imposes a GPS requirement, it's a 24 hour every day of the year obligation to wear it. And it probably is put on in a way that the defendant can't take it off without some government assistance. That's correct. And I think there are times when you wouldn't always be monitoring it, such as if you have a curfew condition. So in that case, you might only be monitoring it. That's correct. And that wouldn't apply in this case where the defendant could obviously travel at any time. And so any time the defendant would be traveling would be a concern. There's no like time of night when we could say we wouldn't have a concern about that. And so that's why the district court imposed this sort of condition. I will say this is a pretty standard GPS monitoring is not an unusual condition. In fact, it's a drug cases. I'm thinking of the Supreme Court. The evidence offered was that, you know, this was a repeat seller. He was a supplier. The police had monitored him before. And so when they put a monitoring on his car, tire somewhere, you know, he was going to sell drugs. That was what he did. So I thought the situation was more encompassing and the government tried to make that clear. And so the only question I had in this case is given this statutory provision. Was there anything else that the district court was required to find or to condition? So I think it's just the that it's reasonably related to the offense, which I think everyone agrees. It's a travel offense. And so monitoring his movements is reasonably related. Mr. Axsom doesn't the council for appellant doesn't agree with that. I think that's true that in his opening brief, you disagreed with that. That hasn't come up. Mr. Hansford, maybe I'm thinking about this way, but I understood, first of all, that there is used by law enforcement, probation, et cetera, so that in cases in which we're talking about the police attaching a GPS device to someone's car or bicycle or whatever, that is like a totally different animal, because in that situation, they are investigating criminal activity. They are surveilling people for the purpose of determining whether they're engaged in criminal than a situation here, where GPS is being imposed as a condition of supervision, after someone has already been convicted of a crime in order to deter or protect the public or something else. It's sort of like the goal of the GPS might help us to understand what its scope is allowable scope and the need for it. All right, so separating those two out, separating those two out that this is not the, you know, put it on the bicycle or put it on the car to figure out if he's committing a crime case. This is the latter. I understand Mr. Axsom's point or the defense counsel's point to be in a situation in which you are attempting to supervision. The court is doing that in order to ensure compliance with some other condition. So in the typical scenario, if you were to say even in a drug situation, a person is convicted of a drug crime, and you have a stay away order, don't go on, you know, the 15th block of G Street or whatever, because that's where you used to hang out with all these people, there's a drug house there or whatever. That's the thing that the court wants you not to do. And GPS monitoring is imposed in order to ensure that you are complying with that condition. So Mr. Axsom says, what is the restriction on his client that GPS is being imposed to, right, to make sure that he is not violating? He says this is a standalone GPS. This is just monitoring my guy's movements everywhere he goes. And I don't understand why that's consistent with the way we normally think about GPS being imposed in this context. So what's your reaction to that? So I think preliminarily, I don't think it's correct that GPS has to be imposed to monitor other conditions. GPS itself provides direct deterrence, as the Seventh Circuit discusses in the Ballou case, as other circuits have consistently found, as the study that the Ballou case cites, discusses from the Institute of Justice. So there's the study from the Institute of Justice, it's of high risk. The Seventh Circuit cites the study, and we cite the Seventh Circuit citing the study, but I think it's worth looking at the study. It's a study of high-risk sex offenders in California who are on parole, and it finds even when they ex-ante have similar risks of recidivism, when you put half of offenders on GPS and leave half under normal parole conditions, they're three times less likely to have sex-related violations and two times less to be re-arrested. So I think that's something I should have cited directly in the brief as opposed to citing the Seventh Circuit, but there is that sort of direct deterrence value, and I think that's a lot more robust showing of deterrence than you get with a lot of other supervision provisions. And especially perhaps in this case, because we have prior evidence of travel. So I suppose if this was a defendant who had sex crime offenses in his local neighborhood, and Judge Walton had imposed a GPS monitoring, one might say, oh, you know, is that really relevant? But here we have a situation in which a person has been convicted repeatedly of traveling long distances in order to engage in this crime. Right. And then the Seventh Circuit also says this is kind of an intuitive point that if you know you're being monitored, you're less likely to go out and commit sex offenses where you would be easily identified afterwards. But then circling back to your questions about the other conditions that would be implemented through GPS monitoring, I think there are three significant conditions where GPS monitoring helps. One is just directly monitoring the travel condition. The defendant is not allowed to leave his jurisdiction without permission. And the district court noted the original underlying offense required interstate travel, traveling from Maryland to the district, which is what the defendant did in that case. And so it monitors that travel restriction. I'm sorry, just to be clear, there was a travel restriction in this case. Correct. That's correct. Then there's also a restriction on his having contact with minors. Now, minors are obviously everywhere. So the GPS can't beat every time he's near a minor. But if the GPS shows him spending significant time near a high school or even spending significant time at an unfamiliar location, the probation officer can then take that GPS information and go investigate what the defendant is doing. And the Ninth Circuit in Lopez cited that sort of rationale for upholding GPS monitoring for someone who was convicted of sex offenses involving children. The third condition that's being implemented here is the computer monitoring condition. The computer monitoring condition failed to be implemented. The probation petition. How does GPS monitor that? He was using an unapproved device to commit this new crime, according to the probation petition. And so if the GPS shows him spending significant time at the library or shows him spending time at an internet cafe, again, the probation officer would be able to investigate at that point. So we do think these come as a package and, again, are very much parallel to the computer monitoring. Why you would want computer monitoring in these sorts of cases is also why you would want travel monitoring in these sorts of cases. Anything further? If Judge Jackson wanted to talk about the issue with the sentencing, with whether or not to remand on. Yes. Why don't you respond to our discussion? Sure. So I guess we did. It is the case that the district court could have imposed 30 years of supervised release, could have imposed lifetime supervised release. We read the transcript to say that the district court, perhaps due to a misunderstanding of law, but the district court was saying that the defendant was going to be given for time previously spent on supervised release. That's certainly not mandatory, as we cite in those circuit decisions, but I think it is up to the district court upon resentencing how long to impose for supervised release. So we do think it's at the very least appropriate to remand for the district court to clarify in that case. And I think whether or not it's a clarification or whether or not the district court's bound by its oral pronouncement has to do with whether or not this court's love decision goes through this, but whether or not there's an ambiguity, this court views it as an ambiguity or this court views it as inconsistent with the oral pronouncement. But the oral pronouncement does control in terms of what the judgment in the case is. And what results if we were to research it and determine that you cannot give credit for time served for supervised release as a district judge? And he said that's what he was doing. Does that change what it is that this court would do or say in remanding it? Yes, I think that would change it. That is not my understanding of the law. Perhaps I missed something, but my understanding is that. Yeah, it's not briefed either. Right. But my understanding, we did cite the circuit cases in our brief that say the district court doesn't have to. No, no, no, no. But you agreed with what the defendant was asking for in your brief. That's correct. All right. Which was, you know, clerical error almost. All right. So let's hear from counsel for appellate. Mr. Axon, you're on mute. Okay. Thank you. I'd like to address really quickly. The computer monitoring is not similar to GPS monitoring here because computer monitoring, as the government said, they place software on your computer that monitors websites that you visit and it pings to the probation office when you go to certain websites. So it's not monitoring software that is sending up to date, like second by second information about what you are searching. I mean, there are prohibitions. And all I'm suggesting with GPS monitoring is when they're not prohibitions, all you are doing is looking at every single person, the place, every single place the person is and retrospectively, perhaps using that information as an investigative tool. You want to respond to the study cited by the seventh circuit at all? I wish that I had seen the study. I have not. I think that's not properly before the court. What's not? There are probably many studies that I could take a contrary view. But you do know the seventh circuit has taken a contrary view. Yes, I'm aware that they have cited a study, but there's right. Yeah. Conclusory approach to the citation. Yeah. Yeah. I'd like to say something really about travel, because that seems to be a focus as though travel is once travel is included in a statute, once it's an element that somehow GPS become has more force. So it's not that the staff that travel was included in a statute, according to Mr. Hansford and the documents, there was a travel condition in this case. And so doesn't that totally change your argument that the court is imposing GPS in order to implement and make sure that Mr. Russell is complying with the travel condition. In this case, that's pretty standard, isn't it? It would be standard. And if that, if it were travel is a standard condition of supervised release. The first thing that I'll say about that is the court did not say that was the reason that it was imposing GPS. In this case, it said it was imposing GPS to protect children, not to enforce another condition, but it is a standard condition of supervised release. And if all you need is that standard condition, which our record is silent as to why the standard condition exists. I suggest to the court that it exists for easier supervision by probation, it does not exist to specifically to prohibit Mr. Russell from going great distances, or need to prohibit him from doing that. In this case, Walker points out, in this case, there's evidence that indicates that he traveled in order to commit this crime. So it's not a condition that has no bearing on anything that a particular defendant has done. I don't think that the record bears that out. I think that the record demonstrates that it is is it is a standard condition of supervised release. It is not a special condition of supervised release. The standard conditions of supervised release apply to every single person placed on supervised release in the District of Columbia. If that is the case, then GPS monitoring by by by the by similar logic is would be allowed for every single person with a travel condition. And and that's that that's what I want to say about travel is that there's no offense that you can commit. Or there I should say there are very few offenses that you can commit without traveling outside your home without traveling somewhere. And we're making a point that he traveled in Maryland, but there's no allegation that his travel three hours within Maryland was in violation of this condition. So you're saying that travels it for Mr. Russell for his specific circumstances, we do not have a situation where he violated that condition. And therefore, the court had to take some extra measure to make sure that he did not violate that condition. All right, I think we have your argument. Anything else you want to say? No, I we submit. Thank you. We'll take the case under advisement.
judges: Rogers, Walker, Jackson